■ MOHAMMED CHAUDHARY et al., Respondents, v BRIAN D. GOLD SR. et al., Appellants. [921 NYS2d 219]—

Order, Supreme Court, New York County (Paul Wooten, J.), entered June 16, 2009, which denied defendants' motion to compel plaintiff Mohammed Chaudhary to appear at a neuropsychological examination by an expert designated by defendants, or, in the alternative, to preclude plaintiffs from presenting evidence of damages at the time of trial, reversed, on the law and as a matter of discretion, without costs, defendants' motion granted, and plaintiff is directed to appear for said examination by an expert designated by defendants. Appeal from order, same court and Justice, entered October 13, 2009, denying defendants' motion to reargue, unanimously dismissed, without costs, as taken from a nonappealable paper.

Although "discovery determinations rest within the sound discretion of the trial court, the Appellate Division is vested

with a corresponding power to substitute its own discretion for that of the trial court, even in the absence of abuse" (*Andon v 302-304 Mott St. Assoc.*, 94 NY2d 740, 745 [2000]). Here the motion court erred in denying defendants' motion to compel plaintiff to submit to a neuropsychological examination. Defendants established the significant differences between a neuropsychiatric examination (already conducted by defense expert Fayer) and the proposed neuropsychological examination.

Defendants asserted that a neuropsychologist utilizes a different methodology and would administer a standardized battery of psychological tests that would quantify the type of brain injury and the degree of cognitive dysfunction related to possible damage of the brain. By contrast, a neuropsychiatrist focuses on emotional and psychiatric functioning.

In support of their motion, defendants submitted an affidavit from a neuropsychologist. That expert stated that his examination of plaintiff would quantify the type of brain injury that he allegedly suffers and would help distinguish between what is functional (i.e., psychiatric depression) or organic (i.e., cognitive dysfunction). He further stated that a neuropsychological examination would provide quantitative data about plaintiff's functioning, such as his IQ score and memory test score. The expert also stated that his testing could aid in forming an ultimate opinion as to the nature and cause of plaintiff's injury as well as to any symptom amplification or exaggeration, an essential defense for defendant.

CPLR 3101 (a) requires the "full disclosure of all matter material and necessary in the prosecution or defense of an action." Pursuant to CPLR 3121, following the commencement of an action, if a plaintiff's physical condition is in controversy, the defendant may require the plaintiff to submit to a physical examination (*see Koump v Smith*, 25 NY2d 287 [1969]). Further, it is within the trial court's discretion to require a plaintiff to submit to more than one physical examination (*see Brown v Metropolitan Transp. Auth.*, 256 AD2d 17, 18 [1998]). However, the party seeking the examination must demonstrate the necessity for it (*see Radigan v Radigan*, 115 AD2d 466, 467 [1985]).

Defendants have demonstrated that a neuropsychological examination is material and necessary in order to defend against plaintiff's claim that he has suffered head injuries with cognitive impairment (*see e.g. Chelli v Banle Assoc., LLC*, 22 AD3d 781 [2005], *lv denied* 7 NY3d 703 [2006]). Concur—Friedman, Catterson and DeGrasse, JJ.

Mazzarelli, J.P., and Manzanet-Daniels, J., dissent in a memorandum by Manzanet-Daniels, J., as follows: I would affirm. De-

fendants failed to make the requisite showing that a further neuropsychological examination is material and necessary for the defense of the action (*see* CPLR 3101 [a]; *compare Radigan v Radigan*, 115 AD2d 466, 467 [1985]).

This personal injury action arises from a motor vehicle accident that occurred on November 1, 2005, when plaintiff's taxi was struck from behind by a truck being driven by defendant Brian D. Gold and owned by defendant Penske Truck Leasing Corp. Plaintiff alleges that as a result of the collision, his head struck the car's windshield, causing him to suffer traumatic brain injury. The primary diagnosis, upon admission to the emergency room, was left frontal lobe contusion. An initial CT scan showed a questionable hyperdense focus in the left frontal lobe but a follow-up CT showed no areas of abnormal attenuation and no evidence of acute intracranial hemorrhage, midline shift or mass effect.

Following the accident, plaintiff complained of a variety of symptoms including depression, anxiety, headaches, lack of coordination, personality change, behavioral disturbances and cognitive impairment marked by inattentiveness, poor short-term memory, confusion, and difficulty recognizing familiar people and places. Plaintiff's bill of particulars enumerated injuries including closed head trauma with concussion, cognitive impairment with dementia, slow speech, poor attentiveness, poor short-term memory and insight, headaches, depression, anxiety, post-traumatic stress disorder and panic attacks. The case management order, dated July 29, 2008, directed that examinations of plaintiff be completed by January 13, 2009.

On December 18, 2008, plaintiff appeared for a neurological evaluation conducted by Jerome M. Block, M.D. Dr. Block performed a neurological examination of plaintiff and found no abnormality of cranial nerves, reflexes, motor or sensory systems. Dr. Block tested plaintiff's cognitive status, including tests of memory, logic, intelligence and mathematical ability. He found that plaintiff's cognitive status was "not normal." Dr. Block noted that plaintiff's answers were "slow," "frequently indirect," and "indefinite."

Dr. Block reviewed the emergency room records at length, including the CT scans. Dr. Block opined that it was "clear the questionable abnormality initially reported was not due to any bleeding within the brain, contusion of the brain, etc.," noting that "[t]he test was repeated and proved to be normal," and that "[i]ntracerebral hemorrhages do not disappear within a matter of hours." Dr. Block noted that plaintiff denied headache, visual or speech disturbance, weakness, or loss of

consciousness following the accident, and at that time had a normal neurological examination.

Dr. Block concluded that evidence of reported cognitive disturbance and personality aberrations following the accident, if present, were not the result of traumatic brain injury but consequent to emotional factors and/or maladaptive behaviors. Dr. Block stated: "By literature and personal experience, the affects [sic] of significant traumatic brain injury are apparent in the immediate post trauma stage and are relatively easily documented. Awareness of symptoms may evolve and symptoms may worsen if there is cerebral edema over a number of days to possibly a week or two, but thereafter symptoms stabilize and/or improve. There is no organic cause for slow deterioration over months or years."

On December 18, 2008, plaintiff appeared for a neuropsychiatric independent medical examination (IME) conducted by Steven A. Fayer, M.D. Dr. Fayer performed a comprehensive psychiatric evaluation including mental status and cognitive skills, as well as a Reyes 15-symbol screening test, designed to detect malingering. Dr. Fayer noted, inter alia, that plaintiff "would stare vacantly at times," that "there was hesitancy in some of his responses," and that his "facial expression and body posture reflected fatigue and depression." Dr. Fayer noted that while attention and concentration were adequate throughout, plaintiff's affect was "markedly constricted," and his mood depressed. Plaintiff demonstrated difficulty with recall, similarities, and simple questions designed to elicit information. Dr. Fayer concluded that plaintiff manifested a major depressive disorder with psychotic features, marked by depression, sadness, difficulty with focus and concentration, and paranoid beliefs that his family was plotting against him. Plaintiff also complained of a "multitude" of "diverse symptoms," including headaches and difficulties with memory. Dr. Fayer concluded, as to these symptoms, that "there is considerable evidence of conscious and unconscious exaggeration and elaboration of symptoms and complaints." Dr. Fayer concluded that "[t]here is an enormous disparity between complaints and objective findings. The depression he manifests, in my opinion, is not a direct sequelae of the accident. Furthermore, the screening test of the Reyes brings up the distinct likelihood of malingering of symptoms."

Fayer stated that "it would be helpful to get a battery of neuropsychological tests to substantiate issues of symptom magnification, motivation and issues of secondary gain."

The motion court rightfully rejected defendants' notice for a further neuropsychological exam on the grounds that plaintiff

had already been subjected to both a neurological and a neuropsychiatric examination. Plaintiff, a California resident, attended two IMEs in New York, with no time limit imposed.

In his comprehensive 17-page report, Dr. Block outlined the results of plaintiff's neurological examination and his review of the relevant records, and concluded that plaintiff had not sustained a traumatic brain injury that would account for his symptoms. Dr. Fayer, similarly, conducted a comprehensive neuropsychiatric examination of plaintiff and concluded that plaintiff's depression was not directly attributable to the accident. Both doctors performed tests of plaintiff's mental status and cognition, including tests of memory, logic, intelligence, language and mathematical reasoning. Defendants have failed to show a compelling need for further neuropsychological testing. Dr. Block did not express a need for further neurological testing. The defense's motion was predicated on Dr. Fayer's statement that a further battery of neuropsychological tests would be "helpful" to ascertain the extent of plaintiff's malingering. This was insufficient to demonstrate need under the circumstances. Defendants' request for a further examination, where defendants' experts evidently have more than enough data to opine as to the cause and extent of plaintiff's neurological problems, is, under the circumstances, nothing less than harassment. It cannot seriously be disputed that the injuries plaintiff alleges flowed from the head trauma—depression, anxiety, headaches, lack of coordination, personality change, behavioral disturbances and cognitive impairments such as poor short-term memory—are consistent with a traumatic brain injury. To subject plaintiff to a further examination, where it has not been demonstrated that such testing is material and necessary to the defense, is merely to give defendant more fodder for their malingering theory, not to illuminate further the nature of plaintiff's neurological maladies.