■ ILONA ORSOS, Appellant, v HUDSON TRANSIT CORP. et al., Respondents. [944 NYS2d 514]—

Order, Supreme Court, Bronx County (Laura G. Douglas, J.), entered March 24, 2011, which granted defendants' motion to vacate the independent medical examination (IME) conducted by Dr. Andrew Hecht, and directed plaintiff to appear for another IME, affirmed, without costs.

"Pursuant to CPLR 3121, following the commencement of an action, if a plaintiff's physical condition is in controversy, the defendant may require the plaintiff to submit to a physical examination. Further, it is within the trial court's discretion to require a plaintiff to submit to more than one physical examination. However, the party seeking the examination must demonstrate the necessity for it" (*Chaudhary v Gold*, 83 AD3d 477, 478 [2011] [citations omitted]; *Tucker v Bay Shore Stor. Warehouse, Inc.*, 69 AD3d 609 [2010]).

Plaintiff, in her affidavit in opposition to defendants' motion to vacate, states that defendants' designated physician, Dr. Hecht, upon completion of the examination, recommended that, once the litigation was over, she see his partner for follow-up care. This statement reflects potential bias on the part of the physician, which tainted his report of his findings. Accordingly, a second examination by a different physician is permissible to ensure that the focus of the medical testimony will be on the nature and extent of plaintiff's alleged injuries, rather than on any taint or irregularity in the first examination.

The dissent agrees that plaintiff should be directed to appear

for another IME, but would find that the court abused its discretion in disallowing discovery of the IME conducted by Dr. Hecht. However, although CPLR 3121 (b) and 22 NYCRR 202.17 (c) provide that copies of the IME report shall be served on the other parties, the court has discretion to direct otherwise, and, under 22 NYCRR 202.17 (j), any party may move to be relieved from compliance. Here, the court did not improvidently exercise its discretion when it vacated the IME. Unlike *Comunale v Sealand Contrs. Corp.* (2 Misc 3d 672 [2004]), on which the dissent relies, this is not a case where a defendant, without justification, seeks to manipulate the system to avoid the production of an unfavorable IME report "simply by designating the doctor as a consultant or not having the doctor prepare a written report" (2 Misc 3d at 674).

The dissent also believes that Dr. Hecht's suggestion that plaintiff see his partner for follow-up care, while perhaps inappropriate, did not amount to bias. However, as the motion court found, Dr. Hecht's recommendation "gives rise to an *appearance* of self dealing, and partiality with resulting prejudice to the defendants' detriment" (emphasis added), which is all that is required to sustain the exercise of the court's discretion (*see Miocic v Winters*, 75 AD2d 887, 888 [1980]). In *Miocic,* defendant sought the re-examination of plaintiff by a different physician because the first physician was a close friend of plaintiff's counsel. Although the doctor maintained that the friendship would not color his opinion, the court found that "[n]o matter how objectively and thoroughly [the doctor] might now act, such actions would necessarily be tainted with the appearance of bias and partiality" (*id.*). Here too, it cannot be determined to what extent, if any, Dr. Hecht's solicitation of plaintiff influenced his report or whether his independence was compromised. Concur—Andrias, Renwick and Freedman, JJ.

Mazzarelli, J.P., and Manzanet-Daniels, J., dissent in part in a memorandum by Manzanet-Daniels, J., as follows: While I agree with the majority that the motion court appropriately exercised its discretion in directing plaintiff to appear for another independent medical examination (IME), I would find that the court abused its discretion in disallowing discovery of the report of the examination conducted by Dr. Andrew Hecht.

The majority does not dispute the proposition that the defense is obligated to turn over the report of an expert retained to conduct an IME of plaintiff. "[D]efendants who seek to invoke their right to a medical examination of plaintiff should not have the option of not providing plaintiff with a report of the IME simply by designating the doctor as a consultant or not having

the doctor prepare a written report. Otherwise, a defendant could conduct an examination which is favorable to plaintiff and not produce it, thereby prejudicing plaintiff and simultaneously undermining the truth seeking function of a trial" (*Comunale v Sealand Contrs. Corp.*, 2 Misc 3d 672, 674 [2004]) [discussed in 150 Siegel's Practice Review, *When D has had Exam Made of P, Rule Requires That Exam Report be Given to P; D Can't Evade Rule by Having Md Make No Written Report*, at 4 [June 2004]).

The majority nonetheless finds in this case that the mere "appearance" (not evidence) of bias trumps the normal rules of discovery. The majority endorses this departure from the customary rules despite the fact that we cannot even ascertain whether Dr. Hecht was in fact tainted by bias because the motion court, inexplicably, failed to conduct an in camera review of Dr. Hecht's report so as to determine whether he was, indeed, unfairly biased as the defense claims. The majority contends that this is not a case where a defendant "seeks to manipulate the system to avoid the production of an unfavorable IME report"; however, it cannot be denied that the defense is nonetheless seizing on what is at most an inappropriate comment to avoid the production of what it perceives as a disadvantageous opinion rendered by the expert it initially designated to perform an IME. Further, the defense is disingenuously arguing that it was biased by the expert's having seen the actual footage of the accident giving rise to plaintiff's injuries.

In any event, the record evidence fails to support the conclusion that Dr. Hecht was biased. The record shows that on October 4, 2010, plaintiff, together with her attorney, appeared at the offices of Dr. Hecht, the physician designated by defendants to conduct an IME. Before examining plaintiff, Dr. Hecht asked her, as is customary during such examinations, to describe her medical history and the facts surrounding the accident. Plaintiff, in response to the doctor's request, described the pertinent facts of the accident. During the course of this recitation, plaintiff advised Dr. Hecht that the accident had been captured on videotape. Dr. Hecht asked if he could see the tape, and plaintiff's counsel thereupon handed him the DVD. Dr. Hecht then left the examination room with the DVD and returned approximately 10 minutes later. Neither plaintiff nor her attorney was present while Dr. Hecht viewed the DVD, nor did either have a conversation with him afterward concerning his impressions of the footage. Upon his return, Dr. Hecht examined plaintiff and recommended that following the completion of this litigation she see his partner for follow-up care.

While this suggestion might be viewed as inappropriate, it

was insufficient, in my view, to establish that Dr. Hecht's opinion was tainted by bias. There is no evidence that either plaintiff or her attorney attempted to influence Dr. Hecht's opinion; indeed, it was Dr. Hecht who asked to view the DVD of the accident. He then viewed the DVD alone, outside of the presence of plaintiff and her attorney.*

Notably, the DVD of the accident viewed by the physician was produced by defendants during the course of discovery. Although so produced, the DVD evidently had not been provided to defendants' own physician, even though such evidence is of the type an expert would find valuable in rendering his or her own opinions. It is difficult to discern how it was improper for the expert to rely on accident footage in arriving at his opinions, and how doing so "tainted" his opinion and "obliterated his objectivity," as the defense asserts. Furthermore, there is no evidence whatsoever that plaintiff's counsel exercised "undue influence" over the examination. Indeed, nothing would prevent plaintiff, during a trial of this action, from showing defendants' expert the footage of the accident and cross-examining said expert's opinions in light of the actual accident footage.

In my opinion, this Court should not sanction this gamesmanship and evident attempt to subvert the truth-seeking function of the court. There is no contention that the DVD did not accurately depict the accident; indeed, the accident footage was produced by defendants themselves. I would therefore order that defendants produce Dr. Hecht's report. I would find, however, that under the circumstances, defendants are entitled to designate an expert to conduct another IME of plaintiff.

---

* *Miocic v Winters* (75 AD2d 887 [1980]), relied on by the majority, is distinguishable inasmuch as the designated defense expert in *Miocic* enjoyed a "close personal friendship" with the plaintiff's counsel. The expert also allegedly revealed that he had "intense animosity" for defense counsel and was "unwilling[ ]" to assist in the preparation of the defendant's case (*id.*). Nothing in the record in this case indicates that plaintiff's counsel knew Dr. Hecht, let alone was a close friend of his, or that he exhibited "animosity" toward defense counsel.