DOLORES TOMAINO et al., Respondents, v 209 EAST 84 STREET CORP., Appellant. [891 NYS2d 51]—

Plaintiffs allege that on June 30, 2006, plaintiff Dolores Tomaino fell on a staircase in defendant's building and suffered a fractured left humerus and other injuries; the humeral fracture was surgically repaired on June 6, 2007 through open reduction with internal fixation; she suffered pulmonary embolisms the day after this surgery; she fell again in December 2007, fracturing her right rib; and the repair of the left humerus subsequently failed, requiring a second surgery on the left humerus in March 2008 to install an artificial humeral head. Plaintiff seeks damages for her injuries and also asserts a claim for lost earnings.

At a compliance conference held on December 5, 2008, the court, responding to defendant's demand for medical records relating to a cardiac catheter ablation procedure performed on plaintiff in 2005, directed plaintiff to submit to a vascular independent medical examination (IME) by defendant's vascular surgeon, Dr. Svahn, and directed defendant to produce the IME report within 20 days of the examination. The court further ordered that "[i]f plaintiff's prior heart treatment is deemed relevant by Dr. Svahn," then plaintiff must "provide such records or authorization." The order did not grant defendant relief on any of its other outstanding discovery demands, including the three at issue on this appeal—medical records relating to a fracture of plaintiff's ring finger in 2002 and to her fall and rib fracture in December 2007, and records relating to a home equity loan that plaintiff took out around October 2007, allegedly to support herself.

Dr. Svahn examined plaintiff on December 18, 2008. At the final compliance conference held on January 26, 2009, the court directed defendant to produce, among other things, the overdue IME report from Dr. Svahn, directed plaintiffs to file a note of issue by February 27, 2009, and, again, did not address any of defendant's other demands. The next day, January 27, 2009, plaintiff filed a note of issue, even though defendant still had not produced Dr. Svahn's IME report, and thus there was no way to know whether the IME report would indicate a need for plaintiff to produce cardiac-related records.

Plaintiffs' certificate of readiness was therefore incorrect, and the note of issue was filed prematurely. Dr. Svahn's report, dated December 31, 2008, was produced by defendant on January 30, 2009; it states that the embolisms were "a direct causal result of undergoing the initial orthopedic surgical procedure on June 6, 2007, which is directly causally related to her fall [on] June 30, 2006." Thus, by the time defendant made its motion to vacate the note of issue on February 13, 2009, all court-ordered discovery had been completed, as Dr. Svahn's report, which was part of the record on the motion, indicated that there was no need for the heart ablation records. The technical prematurity of plaintiffs' note of issue having been cured by January 30, 2009, before defendant filed its motion, the court's disregard thereof was a proper exercise of discretion.

Apart from the possible preclusive effect of the conference orders, defendant should not have the additional disclosure it seeks. Defendant's request for records relating to plaintiff's 2005 heart ablation procedure is based on the theory that her preexisting heart condition may have contributed to the pulmonary embolisms she suffered after her June 2007 surgery; this theory is thoroughly undermined by Dr. Svahn's report. The absence in Dr. Svahn's report of any request for the heart ablation records is highlighted by her later two-sentence affirmation, dated March 20, 2009, subsequent to plaintiffs' opposition papers on the motion dated March 3, 2009, in which she states that the "records of the plaintiff's prior heart ablations may assist me." That affirmation was submitted for the first time with defendant's reply papers, and therefore need not be considered (see *Scansarole v Madison Sq. Garden, L.P.*, 33 AD3d 517, 518 [2006]). Similarly, the only basis articulated for defendant's request for records relating to plaintiff's fracture of her ring finger in 2002 is that those records may shed some light on plaintiff's heart condition.

Defendant contends that medical records relating to plaintiff's December 2007 fall and right rib fracture might show a causal relationship between the fall and plaintiff's need to have her left humeral head replaced in March 2008. In his initial IME report dated November 10, 2008, however, defendant's orthopedist, Dr. Bazos, found that "all [plaintiff's] injuries are causally related to the slip and fall of June 30, 2006"; the report makes no mention of the December 2007 fall and rib fracture. In a three-paragraph addendum, dated March 6, 2009, Dr. Bazos does mention the December 2007 fall, speculating that the "fall perhaps accelerated" plaintiff's need for an artificial left humeral head. As with Dr. Svahn's supplemental affirmation,

however, Dr. Bazos' addendum need not be considered, as it too was submitted with defendant's reply papers.

Finally, defendant asserts that home equity loan materials it seeks will shed light on plaintiff's income. Defendant does not dispute that plaintiff has already produced proof of her past income, including tax returns for the tax years 2005 through 2008. In light of plaintiff's production of four years of tax returns, defendant's request for home equity loan application materials is overbroad and unduly burdensome (see *Editel, N.Y. v Liberty Studios*, 162 AD2d 345 [1990]).

We have considered and rejected defendant's remaining arguments. Concur—Gonzalez, P.J., Moskowitz, DeGrasse, Manzanet-Daniels and Roman, JJ.