■ James Gumbs et al., Respondents, v Flushing Town Center III, L.P., et al., Appellants, et al., Defendant. [981 NYS2d 394]—

Order, Supreme Court, Bronx County (Laura Douglas, J.), entered on or about February 1, 2013, which, to the extent appealed from as limited by the briefs, denied defendants' motion pursuant to CPLR 3126 to strike the complaint upon plaintiffs' failure to provide requested HIPAA-compliant authorizations for the release of medical records, affirmed, without costs.

This action was brought to recover damages for a torn rotator cuff, a fractured ankle and other orthopedic injuries sustained by plaintiff James Gumbs. This appeal involves defendants' discovery notice for the production of authorizations for the release of the records of Gumbs's cardiologist as well as his primary care physician. Defendants moved for an order striking the complaint upon plaintiffs' refusal to provide the authorizations. Counsel's affirmation was accompanied by copies of the

pleadings, bills of particulars, defendants' discovery notice and plaintiffs' response. The motion was made solely on the bare-bones assertion that "[p]laintiff certainly has placed his medical condition in issue and has also placed his ability to work in the future at issue as well as his life expectancy." Plaintiffs opposed the motion on grounds that included the physician-patient privilege. The court below denied the motion, finding that defendants have not shown that the records they seek are related to the claimed injuries. We affirm.

Discovery determinations rest with the sound discretion of the motion court (*Andon v 302-304 Mott St. Assoc.*, 94 NY2d 740, 745 [2000]). This Court is nonetheless vested with a corresponding power to substitute its own discretion for that of the motion court (*id.*). Notwithstanding our own discretion, "deference is afforded to the trial court's discretionary determinations regarding disclosure" (*Don Buchwald & Assoc. v Marber-Rich*, 305 AD2d 338, 338 [1st Dept 2003] [internal quotation marks omitted]). Unlike the dissent, we find no abuse of the court's discretion given the paucity of support for the motion in the first instance. Specifically, defendants' argument regarding the relevance of Gumbs's medical history as set forth in his deposition was improperly made for the first time in their reply papers (*see e.g. Ambac Assur. Corp. v DLJ Mtge. Capital, Inc.*, 92 AD3d 451, 452 [1st Dept 2012]). The purpose of reply papers "is to address arguments made in opposition to the position taken by the movant and not to permit the movant to introduce new arguments in support of the motion" (*id.* [internal quotation marks omitted]). This impropriety deprived plaintiffs of an opportunity to respond to the argument. Accordingly, the denial of defendants' motion was reasonable and supported by law.

We, otherwise, find no occasion to substitute our own discretion for that of the motion court. Gumbs's waiver of his physician-patient privilege is limited in scope to "those conditions affirmatively placed in controversy" (*Felix v Lawrence Hosp. Ctr.*, 100 AD3d 470, 471 [1st Dept 2012]). Gumbs did not place his entire medical condition in controversy by suing to recover damages for orthopedic injuries (*see e.g. Schiavone v Keyspan Energy Delivery NYC*, 89 AD3d 916, 916-917 [2d Dept 2011]). Concur—Mazzarelli, J.P., Sweeny and DeGrasse, JJ.

Freedman and Gische, JJ., dissent in a memorandum by Gische, J., as follows: I respectfully dissent and would reverse the order denying defendants' motion and would direct the production of the requested discovery because plaintiff, by claiming that his enumerated injuries have resulted in his permanent inability to work and permanent or long lasting loss of enjoyment

of life, has placed his general health and medical history at issue.

James Gumbs was supervising work at a construction site when the accident occurred. He claims to have sustained a fractured ankle, bilateral shoulder injuries and a knee injury, all requiring surgeries to correct. In his complaint he seeks damages for both past and future loss of earnings. In his various supplemental bills of particulars, plaintiff claims that his injuries are permanent. In addition to compensation for pain, deformity, disability, stiffness, tenderness, tingling sensation, weakness and limitation, he seeks further damages for anxiety, depression and the loss of enjoyment of life, including an inability to enjoy the normal fruits of his "social, economic and educational" activities. His wife has asserted a derivative claim for both past and future loss of services and consortium.

Plaintiff was deposed and testified that he was prescribed Percocet for pain associated with the injuries caused by the accident. Upon further inquiry, he divulged that he was first prescribed Percocet in 1999 in connection with a gunshot wound he suffered at that time. The wound was to his abdomen. Although he did not lose any organs as a result of the wound, he did undergo "multiple surgeries," including surgeries to his small and large intestines. Percocet was prescribed by his personal physician (Dr. Fields) who still treats him and continues to issue refills for that prescription. According to plaintiff, he takes Percocet for pain associated with that old injury as needed, which is approximately once a month.

Plaintiff also testified at his deposition that doctors discovered a heart condition when he went for routine preoperative screening in 2010 to correct the ankle and shoulder injuries that are the subject of this lawsuit. He is not claiming that the heart condition is related to the accident. The condition appears to have been preexisting, but undiagnosed. Plaintiff stated that he sees Dr. Tims, his cardiologist, every four-to-six months to monitor this condition, which plaintiff describes as his having a "blood vessel [that is] weak" or a weak heart muscle. Plaintiff also stated that Dr. Tims prescribed medication to "strengthen up the muscle" and another medicine to lower his cholesterol. Plaintiff did not know the name of the heart strengthening medicine he is taking, how severe this cardiac problem is or whether he also suffers from high blood pressure.

Plaintiff, now age 60, was asked questions about whether he had any retirement plans. He answered that until he was injured in this accident, he had no intention of retiring and had expected to work until he "[felt] like quitting" because he was

"very active." Before this supervisory position, plaintiff had worked as a laborer. He had held this supervisory position for only a few months.

Following the deposition, defendants served a notice on plaintiff to produce, among other things, authorizations for his pharmaceutical/prescription records and authorizations for Dr. Tims', Dr. Fields' and "St. Roosevelt Hospital's" medical records. Although plaintiff provided authorizations for his pharmaceutical records, and he agrees that he waived the physician-patient privilege regarding treatment he received for his ankle and shoulder injuries, he claims that defendants' demands for his cardiologist's records and the records of his primary physician go beyond the scope of permissible discovery because they are totally unrelated to the injuries he sued on. Defendants brought a motion to strike the complaint for failure to provide discovery, attaching copies of plaintiff's verified complaint and bills of particulars dated January 4, 2011, May 31, 2011, August 24, 2011 and December 6, 2011, each of which alleges permanent physical disabilities as well as his "loss of enjoyment of life" claims.

I disagree that the motion was defective because it did not, at the outset, include a copy of plaintiff's deposition transcript. Defendants' motion squarely put before the court plaintiff's verified complaint and supplemental bills of particulars which expressly specified that plaintiff's demand for monetary damages included loss of future earnings and loss of enjoyment of life based upon the permanency of his injuries. These sworn statements were sufficient to show that plaintiff had put his overall physical condition at issue in this action. The absence of the deposition transcript detailing plaintiff's general physical condition until defendants' reply papers did not warrant denial of defendants' motion.

I also disagree with the majority to the extent it concludes that the medical records sought by defendants are not discoverable because plaintiff claims to have suffered ankle, knee and shoulder injuries and the requested records do not pertain to those specific injuries. I believe the medical records sought by defendants directly relate to plaintiff's sweeping, broad and encompassing claims of permanent disability and loss of enjoyment of life, and it was an abuse of discretion for the trial court to fail to consider these categories of damages in fashioning the scope of discovery.

CPLR article 31 provides that there shall be "full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof" (CPLR

3101 [a]). Whether something is "material and necessary" under CPLR 3101 (a) is "to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity" (*Allen v Crowell-Collier Publ. Co.*, 21 NY2d 403, 406 [1968]). Where a plaintiff has brought a personal injury action, that person has "affirmatively placed his or her mental or physical condition in issue" (*see Arons v Jutkowitz*, 9 NY3d 393, 409 [2007] [internal citations omitted]).

When a plaintiff seeks future lost earnings, he or she squarely puts his or her prior medical history at issue because his or her overall health directly bears on the question of how many years the plaintiff realistically could have continued to work had no accident occurred (*see Tuitt v Otis El. Co.*, 175 AD2d 72 [1st Dept 1991]; *Barlatier v Rollins Leasing Corp.*, 292 AD2d 480 [2d Dept 2002]). Although plaintiff, who was 55 when the accident occurred, claims he had no plans to retire before the accident happened, his prior medical history is relevant to the issue of how long he could have actually worked, had there been no accident (*see Goetchius v Spavento*, 84 AD3d 1712 [4th Dept 2011]). The heart condition and injury to plaintiff's internal organs as a result of his gunshot wound are not so obviously remote to his life/work-life expectancy to warrant their nondisclosure (*compare Tomaino v 209 E. 84 St. Corp.*, 68 AD3d 527 [1st Dept 2009] [pre-accident finger fracture records sought on the grounds they could shed light on the plaintiff's heart condition]).

Likewise, when a plaintiff also seeks damages for the permanent loss of his or her ability to enjoy life, the jury must take into consideration the period of time that the plaintiff can be expected to live (PJI 2:281). Although statistical life expectancy tables are useful, juries are routinely instructed that the tables are not binding and they may also consider evidence of a plaintiff's actual health condition, habits and activities in making this evaluation (PJI 2:281). Consequently, such evidence should be discoverable. Plaintiff's medical records shed light on whether he suffered from other conditions, having nothing to do with this accident, which may have impacted upon his ability to enjoy life and/or life expectancy (*see Deleon v Keystone Frgt. Corp.*, 104 AD3d 541 [1st Dept 2013]; *Diamond v Ross Orthopedic Group, P.C.*, 41 AD3d 768, 769 [2d Dept 2007]; *see also Weber v Ryder TRS, Inc.*, 49 AD3d 865 [2d Dept 2008]).

Plaintiff's argument, which the motion court accepted and this Court now affirms, that the requested medical records must be relevant and directly correlate to a specific physical condition

he has put at issue, meaning his ankle, knee and shoulder injuries, is too narrow an interpretation of this case where plaintiff is seeking broad categories of damages.

Plaintiff contends that his use of the phrase "loss of enjoyment of life" is little more than boilerplate language which he will withdraw, if this Court decides that defendants are entitled to discovery of his medical records. Although plaintiff is free to withdraw this element of damages, he has not yet done so. In any event, in my opinion, the information would still be discoverable in connection with his claims of permanency.

The cases relied upon by plaintiff are distinguishable because the discovery was sought on matters not directly at issue in those actions. In *Felix v Lawrence Hosp. Ctr.* (100 AD3d 470 [1st Dept 2012]), we denied discovery because the defendants sought the subsequent obstetrical records of a plaintiff whose only subsequent claim for damages related to emotional and psychological, not physical, injuries. *Elmore v 2720 Concourse Assoc., L.P.* (50 AD3d 493 [1st Dept 2008]) involved discovery demands for a mother's records regarding her psychiatric history, although she had not put that history at issue in the action. In *Abdur-Rahman v Pollari* (107 AD3d 452 [1st Dept 2013]), we denied discovery regarding the plaintiff's HIV status because of the statutory prohibition against the disclosure of such medical records, absent the showing of a "compelling need" for them which cannot be established by simply showing the information is "material and necessary" within the purview of CPLR 3101 (a) (*id.* at 454-455).

Here, plaintiff has directly put his general health condition at issue by claiming he suffers a number of physical, emotional and psychological injuries caused by defendants' negligence. There is no statutory prohibition preventing the production of his medical records, and he has otherwise waived any physician-patient privilege regarding the record of Dr. Fields, Dr. Tims and "St. Roosevelt Hospital" based upon the sweeping nature of the damages sought.