OPINION OF THE COURT
 

 Ciparick, J.
 

 We are called upon to decide whether, in this action for damages resulting from alleged lead-paint injuries to an infant plaintiff, the plaintiff-mother can be compelled to submit to an IQ examination in compliance with defendants’ discovery demand under our civil action disclosure rules as a matter of law. We conclude, under the circumstances presented here, she cannot.
 

 Plaintiff Prudencia Andón commenced this action on behalf of herself, derivatively, and her infant son, Antonio, to recover damages for injuries her son allegedly sustained from ingesting lead-based paint. These injuries include learning disabilities, developmental delays in speech and language skills, and behavioral problems. During pretrial discovery, defendants moved to compel plaintiff-mother under CPLR article 31 to submit to an IQ test to determine whether her son’s cognitive disabilities were genetic. In support of their motion, defendants introduced an affidavit from Dr. Andrew R. Adesman, a pediatrician experienced in the evaluation of developmental deficiencies in children. Relying on unidentified “studies,” Dr. Adesman concluded that maternal IQ is “extremely relevant” in assessing a child’s potential cognitive development in the absence of lead exposure.
 

 Plaintiffs opposed defendants’ motion, arguing that the information sought bore only a “hypothetical relevance” to the cause of the infant plaintiff’s injuries. Plaintiffs noted that there was no factual demonstration of relevance, that the mother’s mental abilities were not in issue, and that Dr. Adesman failed to supply any scientific literature to support his conclusions. Plaintiffs further noted that defendants had already subjected the infant plaintiff to a battery of tests, and that defendants’ own expert concluded that the child’s deficiencies were not due to lead-based paint, but environmental influences.
 

 Supreme Court granted defendants’ motion and directed that an IQ test be administered by defendants’ expert, Dr. Carlos Flores, in accordance with the procedures set forth in his affidavit. The court ordered that the results not be used for
 
 *745
 
 purposes other than this litigation, reserving for trial decision on the admissibility of the test results. On plaintiffs’ appeal, the Appellate Division reversed. The Court concluded that the information sought was not discoverable under CPLR 3121 (a), since the mother’s mental condition was not “in controversy”
 
 (Andon v 302-304 Mott St. Assocs.,
 
 257 AD2d 37, 39 [internal quotations omitted]). It also concluded that the information was not discoverable under CPLR 3101, New York’s general discovery provision. Although the Court acknowledged the statute’s policy of “far-reaching” pretrial discovery, it concluded that the test result would “hardly aid in the resolution of the question of causality”
 
 (id.,
 
 at 40). The Court added that, if the test of the mother’s IQ were compelled, it would unnecessarily broaden the scope of the litigation and invite extraneous inquiries into the factors contributing to her IQ
 
 (id.,
 
 at 40-41).
 

 The Appellate Division granted defendants leave to appeal and certified the following question to us: “Was the order of this Court, which reversed the order of the Supreme Court, properly made?” We answer that question in the affirmative.
 

 While discovery determinations rest within the sound discretion of the trial court, the Appellate Division is vested with a corresponding power to substitute its own discretion for that of the trial court, even in the absence of abuse
 
 (Brady v Ottaway Newspapers,
 
 63 NY2d 1031, 1032;
 
 Phoenix Mut. Life Ins. Co. v Conway,
 
 11 NY2d 367, 370). Where the Appellate Division has made such a discretionary determination, our review is limited to whether the Appellate Division abused its discretion as a matter of law
 
 (Kavanagh v Ogden Allied Maintenance Corp.,
 
 92 NY2d 952, 954;
 
 Brady v Ottaway Newspapers, supra,
 
 at 1032). Defendants acknowledge this standard of review but maintain that the Appellate Division’s reversal here was not a discretionary determination, but rather was a “blanket prohibition” — as a matter of law — against discovery of maternal IQ in all lead-paint cases. We disagree.
 

 Although the Appellate Division’s certification order states that its decision was “made as a matter of law and not in the exercise of discretion,” we are not bound by that characterization. Rather, we look to see whether the Appellate Division’s decision, regardless of its characterization, nonetheless reflects a discretionary balancing of interests
 
 (see, e.g., Small v Lorillard Tobacco Co.,
 
 94 NY2d 43, 53;
 
 Brady v Ottaway Newspapers, supra,
 
 at 1032-1033;
 
 Brown v City of New York,
 
 60 NY2d 893, 894). Here, recognizing New York’s policy favoring open disclosure, the Appellate Division considered defendants’ need
 
 *746
 
 for the information against its possible relevance, the burden of subjecting plaintiff-mother to the test and the potential for unfettered litigation on the issue of maternal IQ
 
 (Andon v 302-304 Mott St. Assocs., supra,
 
 257 AD2d, at 40-41). The Court noted specifically that “many variables” were involved and that permitting the IQ test in the instant case would “raise more questions than it will answer”
 
 (id.,
 
 at 40). Thus, the Court evaluated competing interests and concluded that, under the circumstances of this case, the potential for confusion and delay created by the information sought outweighed any benefit to the defense. Further, the Appellate Division’s opinion stated that its reversal was “on the law and the facts.” On this record, it cannot be said the Appellate Division categorically denied defendants’ request as a matter of law.
 

 Nor did the Appellate Division abuse its discretion as a matter of law. CPLR 3101 (a) entitles parties to “full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof.” What is “material and necessary” is left to the sound discretion of the lower courts and includes “any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason”
 
 (Allen v Crowell-Collier Publ. Co.,
 
 21 NY2d 403, 406).
 

 Here, the Appellate Division did not abuse its discretion in holding that Dr. Adesman’s affidavit — on which defendants’ request was based — was insufficient to justify compelling plaintiff-mother to take an IQ test. In his affidavit, Dr. Adesman stated that cognitive deficiencies are not unique to lead exposure, but may be attributed to other factors, including a child’s genetic history. While Dr. Adesman indicated that he was familiar with scientific literature concerning the correlation between parental intelligence and a child’s cognitive development, he failed to identify those studies or attach them to his affidavit. Thus, we are left with his conclusory statements that maternal IQ is “extremely relevant” without any indication of how he arrived at that conclusion. Certainly Dr. Adesman offered no evidence as to why maternal IQ was particularly relevant in the present case. Defendants’ belated attempt to supplement Dr. Adesman’s conclusions by attaching a compendium of scientific publications to their brief before this Court is impermissible. Defendants neither submitted these publications to Supreme Court, nor did they move to enlarge the record on appeal to include them. Consequently, these materials are not properly before this Court and. cannot
 
 *747
 
 be considered
 
 (see, Crawford v Merrill Lynch, Pierce, Fenner & Smith,
 
 35 NY2d 291, 298;
 
 Johnson v Equitable Life Assur. Socy.,
 
 16 NY2d 1067, 1068-1069).
 

 Upon reviewing the scientific basis for defendants’ request, the Appellate Division was within its discretion in determining that the information sought was speculative and would delay the proceedings by “turning the fact-finding process into a series of mini-trials” regarding the factors contributing to the mother’s IQ
 
 (Andon v 302-304 Mott St. Assocs., supra,
 
 257 AD2d, at 40-41). While open discovery is crucial to the search for truth, equally important is the need to avoid undue delay created by battling experts
 
 (see, Allen v Crowell-Collier Publ. Co., supra,
 
 21 NY2d, at 406).
 

 Finally, the Appellate Division was entitled to consider the burden imposed by an IQ examination and the personal nature of the information sought. Although New York’s discovery provisions have been liberally construed to favor disclosure, “litigants are not without protection against [their] unnecessarily onerous application * * * ‘Under our discovery statutes and case law, competing interests must always be balanced; the need for discovery must be weighed against any special burden to be borne by the opposing party’ ”
 
 (Kavanagh v Ogden Allied Maintenance Corp., supra,
 
 92 NY2d, at 954, quoting
 
 O’Neill v Oakgrove Constr.,
 
 71 NY2d 521, 529,
 
 rearg denied
 
 72 NY2d 910). Far from creating a blanket rule prohibiting discovery of maternal IQ, the Appellate Division evaluated defendants’ request in the context of this case and in light of the evidence presented to it. The Appellate Division concluded that the burden of subjecting plaintiff-mother to an IQ test outweighed any relevance her IQ would bear on the issue of causation. The Court noted that the mother’s mental condition is not in dispute and that IQ results, while not confidential, are private. Under these circumstances, we are satisfied that the Appellate Division did not abuse its discretion as a matter of law in denying defendants’ discovery motion.
 

 To the extent defendants rely on cases permitting discovery
 
 (see, e.g., Anderson v Seigel,
 
 255 AD2d 409;
 
 Salkey v Mott,
 
 237 AD2d 504), we emphasize that discovery determinations are discretionary; each request must be evaluated on a case-by-case basis with due regard for the strong policy supporting open disclosure
 
 (see, Williams v Roosevelt Hosp.,
 
 66 NY2d 391, 397). Absent an abuse of discretion as a matter of law, this Court will not disturb such determinations.
 

 
 *748
 
 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.
 

 Chief Judge Kaye and Judges Smith, Levine, Wesley and Rosenblatt concur; Judge Bellacosa taking no part.
 

 Order affirmed, etc.