OPINION OF THE COURT
Victor I. Barron, J.
Plaintiff Ebony Anderson, an infant, by her mother and natural guardian, Christine Anderson, moves for an order remov *740 ing this action from the “stay” calendar and setting the action down for an immediate trial, and for a protective order, pursuant to CPLR 3103, denying the request of defendant and third-party plaintiff Frances Silvergate Seigel (Seigel) and third-party defendant New York City Housing Authority (NYCHA) for an IQ test of Christine Anderson due to a change in law; or, alternatively, for a protective order deeming “outstanding” discovery sought by Seigel and NYCHA as waived due to laches.
By decision and order dated October 20, 2000, this court granted the motion to the extent of removing the action from the “stay” calendar and setting it down for trial in JCP for January 23, 2001. It denied that branch of the motion deeming waived any outstanding discovery sought by Seigel and NYCHA due to their laches with respect to the subpoenaed school records of the nonparty siblings LaToya Anderson and Dominique Anderson, subject to those records being made available to the parties upon completion of an in camera review for the purpose of redacting privileged material. The court reserved decision on the remaining issues raised in the motion.
Facts
The facts preliminary to this motion have been set forth in this court’s previous decision as follows:
“Plaintiff commenced this action seeking damages for injuries allegedly sustained by the infant plaintiff as a result of exposure to lead paint and other contaminants while residing in the premises owned by Seigel. The alleged period of exposure was October 17, 1984 to June 30, 1988. Seigel commenced a third-party action against NYCHA alleging that the infant plaintiff was injured due to exposure to lead paint in apartment 13-G, 60 Carlton Avenue, Brooklyn, New York, a building owned by NYCHA and occupied by Tommie Smith, the father of Ebony Anderson. It is alleged that the infant plaintiff suffered various injuries, including short attention span and various speech and cognitive deficits” (Anderson v Seigel, 175 Misc 2d 609, 611-612).
NYCHA moved to compel plaintiff to provide authorizations for (a) all academic records of the infant plaintiff’s two nonparty siblings; (b) academic and employment records of the mother, Christine Anderson; and (c) IQ testing of the mother, Christine *741 Anderson, and the nonparty father, Tommie Smith. This court held that the academic records of the infant plaintiffs nonparty siblings were not discoverable, and that NYCHA was not entitled to the IQ tests of the parents or to the mother’s academic and employment records (id.).
NYCHA appealed the order and sought a stay of trial pending the appeal. The request for a stay of trial was granted by the Appellate Division, Second Department. Subsequently, by order dated November 16, 1998, the Appellate Division modified this court’s order, finding that the authorizations as to the academic records of the infant plaintiffs siblings and her mother, the mother’s employment records, and the IQ testing of the infant plaintiffs mother “were likely to lead to the discovery of admissible or relevant evidence” (Anderson v Seigel, 255 AD2d 409, 410).[1] As such, the Court remanded the matter to this court directing an in camera review of that discovery material before final disclosure (Anderson v Seigel, 255 AD2d 409, supra).
On or about December 23, 1998, NYCHA served plaintiff with a “Notice to Produce Authorizations” and a “Notice to Produce” the academic records of the infant plaintiffs siblings and academic and employment records of the infant plaintiffs mother for an in camera review by this court. At the same time, NYCHA served its “Demand for IQ Testing” of the infant’s mother, Christine Anderson.
On or about January 27, 1999, plaintiff subpoenaed the school records of Christine Anderson, and nonparties LaToya Anderson and Dominique Anderson, which were so ordered by this court and served by plaintiff upon the New York City Board of Education. Plaintiff also sought leave to appeal to the Court of Appeals with respect to the IQ testing of Christine Anderson. Said application was denied by the Appellate Division, Second Department, by order dated May 21, 1999.
By letters dated June 23, 1999 and October 29, 1999, plaintiffs counsel advised the court that the stay of trial was over and requested that the matter be removed from the stay calendar. Counsel also asked the court to proceed with its in camera review of the school records of the infant plaintiffs siblings and the school records of derivative plaintiff Christine Anderson, as plaintiffs counsel allegedly would not schedule or *742 proceed with Christine Anderson’s IQ test until the court completed the in camera review and released the school records of the nonparties and derivative plaintiff.
As indicated, the present motion, brought in August 2000, was granted to the extent of removing the action from the “stay” calendar and setting down the matter for trial in JCP for January 23, 2001. Further, that branch of the motion deeming waived any “outstanding” discovery sought by Seigel and NYCHA due to laches with respect to the subpoenaed school records of nonparty siblings LaToya Anderson and Dominique Anderson was denied, subject to an in camera review. Lastly, the court reserved decision on the remaining issues raised in the motion.
Analysis
Plaintiff seeks a protective order, pursuant to CPLR 3103, denying the request of Seigel and NYCHA for an IQ test of Christine Anderson based upon the holding of Andon v 302-304 Mott St. Assocs. (94 NY2d 740), or alternatively, a protective order deeming “outstanding” discovery sought by Seigel and NYCHA waived due to laches.[2]
Addressing the arguments seriatim, Andon (supra) affirmed the decision of the Appellate Division, First Department (257 AD2d 37), which reversed an order of the Supreme Court compelling an IQ examination of the infant plaintiff’s mother in a lead paint damages case. The First Department concluded that the information sought was not discoverable under CPLR 3121 (a) since the mother’s mental condition was not “in controversy” in that she had not placed her mental or physical condition in issue (id., at 39-40). The court also concluded that the information was not discoverable under CPLR 3101, ruling:
“In our view, however, since so many variables are involved, the test result will raise more questions than it will answer and hardly aid in the resolution of the question of causality. Even if maternal IQ may be a factor in determining a child’s intelligence, extending the inquiry into this area would ‘dramatically broaden the scope of the litigation’ (citation omitted), turning the fact-finding process into a series of mini-trials regarding, at a minimum, the factors contributing to the mother’s IQ *743 and, possibly, that of other family members. ‘There is no logical end to the litigation inquiry once individual boundaries are crossed’ [citation omitted].” (Id., at 40-41.)
The court also noted the “vast difference * * * between the disclosure of available academic records and subjecting a party, who has not injected his or her mental or physical condition into the case, to a mental examination for the purpose of creating evidence” stating that former was “far less intrusive” (id., at 41).
In affirming the decision, the Court of Appeals first found that the Appellate Division had not denied defendants’ discovery demand as a matter of law, but had exercised a “discretionary balancing of interests” in coming to its determination, namely consideration of “defendants’ need for the information against its possible relevance, the burden of subjecting plaintiff-mother to the test and the potential for unfettered litigation on the issue of maternal IQ” (Andon v 302-304 Mott St. Assocs., supra, 94 NY2d 740, 745-746). It then found that the First Department had not abused its discretion in holding that the expert’s affidavit was insufficient to justify compelling the plaintiff mother to take an IQ test. Specifically, the Court held that although the expert stated that cognitive deficiencies were not unique to lead exposure, and opined that he was familiar with scientific literature concerning the correlation between parental intelligence and a child’s cognitive development, “he failed to identify those studies or attach them to his affidavit,” which left the Court “with his conclusory statements that maternal IQ [was] ‘extremely relevant’ without any indication of how he arrived at that conclusion” (id., at 746). The Court also held that the expert “offered no evidence as to why maternal IQ was particularly relevant in the present case” (id.).
Similarly here, the court finds that the affidavits of Dr. David Masur, submitted by defendants upon the instant motion, are insufficient to provide a basis to compel the infant plaintiff’s mother to undergo an IQ test. In this regard, in his July 25, 1997 affidavit, Dr. Masur fails to set forth a basis for his conclusion that “parental intelligence, socioeconomic status, and the home environment are the strongest predictors of the educational performance of children in a variety of settings.” As plaintiff argues, the affidavit fails to cite any studies to support this conclusion. As for Dr. Masur’s October 8, 1997 affidavit, he asserts that parental IQ testing is “clearly * * * necessary in order to uncover a possible cause for [a learning disability],” *744 and that such testing is “particularly important when the issue is the possibility of lead exposure as a cause for the learning disability.” While Dr. Masur cites to and identifies three independent scientific studies which purport to provide a basis for his conclusion, his references thereto are vague and completely lacking in any probative factual analysis. As such, this court finds the affidavit is insufficient to support Dr. Masur’s conclusion that “without additional information as regards to cognitive performance of [the infant plaintiff’s] parents * * * the true cause of [the infant plaintiff’s] learning difficulties cannot be discerned.” Further, contrary to defendants’ claim, the mother’s admission that she did not finish high school does not provide a basis to compel her to undergo an IQ test, particularly since there is no indication in the record as to why she discontinued her education. Notably, even defendants characterize this evidence as “a family history of possible limited academic abilities,” demonstrating the speculative nature of their argument. In light of the court’s determination, it is not necessary to consider plaintiff’s alternative argument. In any event, were the court to do so, it would find that plaintiff has failed to establish that Seigel and NYCHA have waived their claim with respect to compelling Christine Anderson’s IQ test due to laches (Dwyer v Mazzola, 171 AD2d 726, 727).
In sum, the court grants the motion of plaintiff for a protective order, pursuant to CPLR 3103, denying Seigel’s and NYCHA’s request for an IQ test of the infant plaintiff’s mother, Christine Anderson.

. The Court also concluded that this court had properly denied any requests relating to the father since he was not a party to that matter, and had not been served with the motion papers.

. The remaining “outstanding discovery” refers to an IQ test of Christine Anderson and discovery of her academic and employment records.