Brito v Gomez (2018 NY Slip Op 08105)





Brito v Gomez


2018 NY Slip Op 08105


Decided on November 27, 2018


Appellate Division, First Department


Singh, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on November 27, 2018
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

David Friedman, J.P.
Sallie Manzanet-Daniels
Peter Tom
Angela M. Mazzarelli
Anil C. Singh,JJ.


306267/14 

[*1]Benedicta Brito, Plaintiff-Respondent,
v
Rafael Gomez, et al., Defendants-Appellants.



Defendants appeal from the order of the Supreme Court, Bronx County (Laura G. Douglas, J.), entered on or about June 30, 2016, which, to the extent appealed from as limited by the brief, denied defendants' motion to strike the note of issue and to compel plaintiff to provide discovery relating to prior treatment of her knees.




Lewis Brisbois Bisgaard & Smith LLP, New York (Nicholas Hurzeler and C. Briggs Johnson of counsel), for appellants.



SINGH, J.


We are asked on this appeal to decide whether a litigant in a personal injury action who makes a claim for lost earnings and loss of enjoyment of life waives the physician-patient privilege with respect to prior injuries not raised in the lawsuit. Based on our settled precedent, we find that the privilege is waived only for injuries affirmatively placed in controversy.
Plaintiff Benedicta Brito was allegedly involved in a motor vehicle accident on May 5, 2014. She commenced this action against defendants Rafael Gomez and Don Thomas Buses, Inc. to recover damages for personal injuries allegedly sustained in the accident. In her bill of particulars, plaintiff alleges injuries only to her cervical spine, lumbar spine and left shoulder.
Over her counsel's objection, plaintiff testified at her deposition that in October 2009 she had surgery on her left knee and began to ambulate with the aid of a cane. After a 2012 accident, plaintiff had surgery to her right knee. Plaintiff testified that the knee surgeries may have affected her ability to wear heels. Her back and neck injuries prevent her from wearing heels and [*2]also have made it more difficult to walk.
On March 14, 2016, defendants served a Supplemental Notice for Discovery and Inspection and Demand for Authorizations (Supplemental Notice for Discovery). As relevant to this appeal, defendants demanded "[a]uthorizations for all facilities where plaintiff received medical treatment for her knees, including, but not limited to, the hospital where her knee surgeries were performed."
On April 13, 2016, plaintiff filed a note of issue, certifying that the matter was ready for trial and represented that there were "no outstanding requests for discovery."
On May 9, 2016, defendants timely moved to vacate the note of issue and to compel compliance with their Supplemental Notice for Discovery. Plaintiff opposed the motion on June 6, 2016 and responded to the Supplemental Notice for Discovery on June 3, 2016, objecting to the discovery demand for unrelated medical treatment.
By letter dated June 23, 2016, defendants noted that plaintiff had made "multiple claims relating to loss of enjoyment of life in the bill of particulars, including, but not limited to, impairments and negative effects upon plaintiff's pre-accident enjoyment of life, day-to-day existence, activities, functions, employment and involvements; limitation, diminution and/or effect of functions, activities, vocation, avocation and all other activities in which the plaintiff engaged prior to the underlying accident.'" The letter referred to plaintiff's deposition testimony concerning her prior left knee surgery in October 2009 and right knee surgery in 2012, her reliance on a cane, bilateral knee pain, and limited ability to wear heels, which was also a post-accident complaint. The letter demanded authorizations for facilities where plaintiff received treatment for her knees.
On June 28, 2016, Supreme Court ordered plaintiff to provide authorizations for medical treatment plaintiff received for her knees. Nor did Supreme Court grant the request to vacate the note of issue. Defendants appeal.
As an initial matter, defendants — and the dissent - contend that the note of issue should be stricken pursuant to Uniform Rules for Trial Courts (22 NYCRR) § 202.21(d) or alternatively, 22 NYCRR § 202.21(e). Supreme Court granted defendants' request for authorizations to various medical providers and ordered plaintiff to appear for an independent medical examination. Plaintiff complied with the court's order. Accordingly, the note of issue should not be vacated.
CPLR 3101(a) provides that "[t]here shall be full disclosure of all matter material and necessary in the ... defense of an action" by a party to the action (see Allen v Crowell-Collier Publ.Co., 21 NY2d 403, 406 [1968]). "[D]iscovery determinations are discretionary [and] must be evaluated on a case-by-case basis with due regard for the strong policy supporting open disclosure" (Andon v 302-304 Mott St. Assoc., 94 NY2d 740, 747 [2000]). A trial court's disclosure determinations should be given deference (see Don Buchwald & Assoc. v Marber-Rich, 305 AD2d 338 [1st Dept 2002]).
When the mental or physical condition of a litigant is in controversy, a notice for a medical exam or for the inspection of records may be served (see CPLR 3121[a]). A party's right to discovery of a litigant's mental or physical condition is subject to the physician-patient privilege. The "privilege exists to protect important policies — namely, uninhibited and candid communication between patients and medical professionals, the accurate recording of confidential information and the protection of patients' reasonable privacy expectations" (Matter of New York City Health & Hosps. Corp. v New York State Commn. of Correction, 19 NY3d 239, 244 [2012]). "[T]he privilege remains rooted in both the statutory law and public policy of New York State" (Dillenbeck v Hess, 73 NY2d 278, 286 [1989]; see also CPLR 4504). The privilege was codified "on the belief that fear of embarrassment or disgrace flowing from disclosure of communications made to a physician would deter people from seeking medical help" (Williams v [*3]Roosevelt Hosp., 66 NY2d 391, 395 [1985]).
However, the privilege is waived where a party affirmatively places his or her physical or mental condition in controversy (see Cynthia B. v New Rochelle Hosp. Med. Ctr., 60 NY2d 452, 456-457 [1983]; Koump v Smith, 25 NY2d 287 [1969]). "In order to effect a waiver, the party must do more than simply deny the allegations in the complaint — he or she must affirmatively assert the condition either by way of counterclaim or to excuse the conduct complained of . . ." (Dillenbeck, 73 NY2d at 288 [internal quotation marks omitted]). The burden is on the party seeking the disclosure to make an evidentiary showing that the parties' physical condition is in controversy (id.).
We have consistently followed the waiver rule as enunciated by the Court of Appeals (see Spencer v Willard J. Price Assoc., LLC, 155 AD3d 592 [1st Dept 2017] [the plaintiff's diabetic condition and high blood pressure were not placed in controversy since she sought to recover for orthopedic injuries]; Kenneh v Jey Livery Serv., 131 AD3d 902 [1st Dept 2015] [the plaintiff's diabetic condition, anxiety and other symptoms were not placed in controversy as she sought to recover for injuries to the right knee, shoulders and spine]; Gumbs v Flushing Town Ctr. III, L.P., 114 AD3d 573, 574 [1st Dept 2014] [records of the plaintiff's cardiologist and primary care physician not discoverable since he was seeking to recover damages for orthopedic injuries]; Felix v Lawrence Hosp. Ctr., 100 AD3d 470, 471 [1st Dept 2012][the plaintiff's subsequent obstetrical treatment was not placed in controversy as her claims relate only to subsequent emotional and psychological injuries]).
Contrary to defendants' argument, neither plaintiff's bill of particulars nor her deposition testimony places her prior knee injuries in controversy. In paragraph 10 of her bill of particulars, plaintiff limits the injuries she sustained in the 2014 accident to her cervical spine, lumbar spine, and left shoulder. Accordingly, the specified bodily injuries that are affirmatively placed in controversy are the spinal and shoulder injuries. The claims for lost earnings and loss of enjoyment of life alleged in the bill of particulars are limited to these specified injuries. Plaintiff does not mention her prior knee treatments. Nor does she claim that the injuries to her knees were exacerbated or aggravated as a result of the 2014 automobile accident.
Relying on Caplow v Otis Elev. Co. (176 AD2d 199, 200 [1st Dept 1991]), defendants argue that plaintiff's prior knee injuries are material and necessary to plaintiff's claim for lost earnings. In Caplow, we permitted discovery related to the plaintiff's treatment for gout, even though he made no claim for injuries to his legs and feet. We also allowed discovery related to the plaintiff's upper back, although he only claimed injuries to his lower back. We reasoned that the medical records "might be useful" in determining to what extent the plaintiff's lost wages might be attributable to the plaintiff's medical treatment subsequent to the accident at issue.
However, our cases since Caplow has granted discovery of medical records only where the plaintiff has alleged an aggravation or exacerbation of prior injuries (see McGlone v Port Auth. of N.Y. and N.J., 90 AD3d 479, 480 [1st Dept 2011] [affirming Supreme Court's order requiring the plaintiff to provide authorizations as the plaintiff claimed that "the subject accident aggravated or exacerbated underlying conditions that were asymptomatic before the accident"]; Rega v Avon Prods., Inc., 49 AD3d 329 [1st Dept 2008] [the defendants entitled to discovery to determine whether the plaintiff's claimed injuries are attributable to other accidents where the plaintiff had alleged aggravation or exacerbation of prior injuries that may have impacted on his ability to work after the accident at issue]; cf. Noble v Ackerman, 216 AD2d 140, 140 [1st Dept 1995] ["(d)efendant's request for medical authorizations pertaining to a knee operation performed on plaintiff more than ten years before the accident in issue was properly denied on the ground that plaintiff does not claim that his knee was injured in the accident or that his prior knee injury was aggravated"]; Ciancio v Woodlawn Cemetery Assn., 210 AD2d 9, 10 [1st Dept 1994] [citing to Caplow, we ruled that post-accident hospital records for an undisclosed medical condition [*4]unrelated to the injuries claimed in the action were not material and necessary to defend against the plaintiff's claim for lost earnings]).
Here, as we noted earlier, plaintiff does not claim that her prior knee injuries were exacerbated or aggravated as a result of the 2014 accident. Accordingly, plaintiff's claim for lost earnings does not affirmatively place the condition of her knees in controversy (see Felix, 100 AD3d at 471; Tomaino v 209 E. 84 St. Corp., 68 AD3d 527 [1st Dept 2009] [the plaintiff's claim for lost earnings relating to a fractured humerus did not place in controversy a prior fracture of her ring finger and a subsequent rib fracture]).
Nor did plaintiff affirmatively place the physical condition of her knees at issue by asserting loss of enjoyment of life.
As a threshold matter, a claim for loss of enjoyment of life is not a separate item of recoverable damages, but a factor in assessing pain and suffering (see McDougald v Garber, 73 NY2d 246 [1989]). Therefore, the factfinder, in evaluating damages for pain and suffering, may "consider the effect of the injuries on the plaintiff's capacity to lead a normal life" (id. at 255).
In Gumbs (114 AD3d at 574), the plaintiff brought a personal injury action seeking damages for a torn rotator cuff, a fractured ankle and other orthopedic injuries. The defendants demanded authorizations for medical records from the plaintiff's cardiologist and primary care physician on the ground that the plaintiff had placed his entire medical condition at issue.
We found that by suing for orthopedic injuries, the plaintiff did not place his entire medical condition in controversy. The dissent in Gumbs would have directed production of the medical records, reasoning that by making claims for lost earnings and loss of enjoyment of life, the plaintiff placed his general health and medical history at issue. The dissent noted that the medical records for the unrelated injuries would "shed light on whether he suffered from other conditions, having nothing to do with this accident, which may have impacted upon his ability to enjoy life and/or life expectancy" (114 AD3d at 577 [Gische, J., dissenting]).
However, the majority's decision in Gumbs continues to be the prevailing law in this department. "Plaintiff's waiver of his physician-patient privilege is limited to those conditions that he affirmatively placed in controversy" (Diako v Yunga, 148 AD3d 438, 438 [1st Dept 2017]; see also Rohan v Turner Constr. Co., 158 AD3d 436 [1st Dept 2018]; Spencer, 155 AD3d at 592). Similarly, in James v 1620 Westchester Ave. LLC (147 AD3d 575 [1st Dept 2017]), we held that the defendant failed to establish how the plaintiff's drug treatment, mental health information, and HIV-related information were related to her future enjoyment of life when she placed at issue her back and leg injuries.
Defendants cite to Second Department precedent in support of their argument that the condition of plaintiff's knees is material and necessary to their defense. The Second Department has held that a party places his or her entire medical condition in controversy through "broad allegations of physical injuries and claimed loss of enjoyment of life due to those injuries" (Greco v Wellington Leasing L.P., 144 AD3d 981, 982 [2d Dept 2016]; see also Bravo v Vargas, 113 AD3d 577, 578 [2d Dept 2014]; Orlando v Richmond Precast, Inc., 53 AD3d 534, 535 [2d Dept 2008]; Vanalst v City of New York, 276 AD2d 789 [2d Dept 2000]).
We are not persuaded by the reasoning of the Second Department. In our view, the Second Department's precedent cannot be reconciled with the Court of Appeals' rulings that the physician-patient privilege is waived only for injuries affirmatively placed in controversy.
The dissent acknowledges that, unlike the Second Department, "we do not regard generalized allegations of loss of enjoyment of life or of the ability to work as opening the door to a plaintiff's entire medical history" and argues that we need not adopt the Second Department's expansive view. Instead, the dissent would find that medical records pertaining to a preexisting condition that is relevant to a functional deficit — here plaintiff's alleged difficulty in walking and standing — should be discoverable.
We are not persuaded by this reasoning. Plaintiff has not affirmatively placed the condition of her knees at issue. Therefore, the privilege is not waived. In fact, the dissent's argument endorses the expansive view the Second Department has taken on the issue of waiver.
Moreover, the cases cited by the dissent in support of its position are distinguishable. In Walters v Sallah (109 AD3d 401 [1st Dept 2013]), the plaintiff claimed personal injuries as a result of an automobile accident. He alleged an inability to perform his usual daily functions for at least 90 out of 180 days following the accident. The defendants sought to determine whether the plaintiff's preexisting arthritis was the basis for his inability to perform substantially all his usual daily activities. We found that the defendants met their burden to show that the records relating to the plaintiff's arthritis were relevant to a physical condition that the plaintiff placed in controversy. Here, in contrast, defendants seek medical records relating to plaintiff's knees on the ground that the treatment is relevant to her claim for lost earnings and loss of enjoyment of life.
In Bennett v Gordon (99 AD3d 539, 539-540 [1st Dept 2012]), the plaintiff claimed injuries to his left shoulder and head. Additionally, the plaintiff alleged tremors in his upper extremities and an overall weakness. The plaintiff maintained that these injuries permanently disabled him. We found that Supreme Court providently exercised its discretion in allowing "limited discovery" regarding a previous "right shoulder injury." Here, plaintiff limits her claims to specific spinal and shoulder injuries. She makes no claim of an overall weakness or permanent disability as a result of her accident.
The dissent agrees that plaintiff makes no claim that her knees were injured in the accident. Nevertheless, the dissent argues that since the condition of the knees is essential to the actions of walking and standing, plaintiff has placed at issue the condition of her knees. Defendants point to plaintiff's deposition testimony — her difficulty in walking, use of a cane to ambulate, and inability to wear heels — as a basis for claiming that the medical records for her knee surgeries are material and necessary to their defense of this action. Implicitly conceding that this is contrary to our established precedent, the dissent relies on its own medical theory that plaintiff's preexisting knee condition possibly affects her ability to walk and stand. This argument is not raised by defendants but rather formulated by the dissent. Plaintiff has not had an opportunity to respond through medical opinion to the dissent's theory. Moreover, medical opinions are the domain of an expert and not this Court. In fact, defendants' have failed to provide opinion, expert or otherwise, causally connecting plaintiff's prior treatment of her knees to her subsequent spinal and shoulder injuries. Defendants have failed to meet their burden to establish that plaintiff has placed her prior knee injuries in controversy.
We decline to substitute our judgment for the sound discretionary discovery determinations made by Supreme Court.
Accordingly, the order of the Supreme Court, Bronx County (Laura G. Douglas, J.), entered on or about June 30, 2016, which, to the extent appealed from as limited by the brief, denied defendants' motion to strike the note of issue and to compel plaintiff to provide discovery relating to prior treatment of her knees, should be affirmed, without costs.
All concur except Friedman, J.P. and
Tom, J. who dissent in an Opinion by
Friedman, J.




FRIEDMAN, J.P. (dissenting)


This appeal presents the question of whether plaintiff, who seeks damages for the impairment of her ability to walk and to stand allegedly caused by back injuries suffered in a motor vehicle accident, may invoke the physician-patient privilege to avoid producing records of the surgeries on her knees that she received not long before the accident. In my view, the majority's denial of such discovery to defendants unrealistically ignores the fact that plaintiff has [*5]placed at issue her ability to walk and to stand, a specific bodily function to which her knees are as vital as her spine, by seeking damages for the impairment of that function. Defendants should be permitted to explore the true source of this functional deficit. It is grossly unfair to allow plaintiff unilaterally to cut off any inquiry into an imminently possible alternative source of the specific physical impairment for which she seeks damages (not merely an amorphous impairment of earning capacity or enjoyment of life, as mischaracterized by the majority) by the simple expedient of omitting an allegation that she injured her knees in the accident. Contrary to the majority's view, this Court's precedents, while more restrictive of discovery in this context than those of the Second Department, do not go so far as to compel such an unjust result. Notably, the majority appears to acknowledge that, under the Second Department's case law, defendants would be entitled to discovery of the information at issue on this appeal (see e.g. Bravo v Vargas, 113 AD3d 577, 578-579 [2d Dept 2014] ["the plaintiff affirmatively placed her entire medical condition in controversy through (her) broad allegations of physical and mental injuries" and "claims of loss of enjoyment of life," thereby entitling the defendants to discovery of "records pertaining to her preexisting medical conditions"]).[FN1]
Given the relevance of the condition of plaintiff's knees to her ability to walk and to stand, she has waived, for purposes of this action, the privilege that otherwise shields from disclosure the medical records pertaining to her pre-accident knee surgeries (see Cynthia B. v New Rochelle Hosp. Med. Ctr., 60 NY2d 452, 456-457 [1983]; CPLR 3121[a], 4504[a]). Defendants are therefore entitled to an order, pursuant to CPLR 3124, compelling plaintiff to produce, in response to defendants' demand, authorizations allowing defendants to obtain such medical records.
Defendants are also entitled to vacatur of plaintiff's prematurely filed note of issue and certificate of readiness, the latter of which inaccurately represents that, as of the time of its filing, there were "no outstanding requests for discovery." Plaintiff improperly filed these papers although she had not yet served a response — not even an objection — to defendants' discovery notice that included the demand for authorizations for the release of her knee-related medical records, and notwithstanding her failure to have submitted such a response within the time provided by law. She then continued to ignore the discovery notice until days before filing her opposition to defendants' motion to compel. Given plaintiff's failure to serve a timely objection to any of the requests in the discovery notice (or any response to the notice at all until after defendants made their motion to compel), we are limited to considering whether that notice's request for authorizations for her knee-related medical records seeks information outside the scope of her waiver of privilege in bringing this action or is otherwise palpably improper (see Recine v City of New York, 156 AD3d 836 [2d Dept 2017]; Patrick M. Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3122:1, C3124:2). This is a standard that plaintiff cannot meet, given that she seeks to recover for the impairment of her ability to walk and to stand.
For all of the foregoing reasons (which are more fully discussed below), I believe that we [*6]should reverse Supreme Court's order to the extent defendants appeal therefrom, and, upon reversal, that we should grant the motion to compel to the extent of striking the note of issue and directing plaintiff to furnish to defendants authorizations to obtain all medical records relating to the treatment of her knees created since May 5, 2009 (five years before the date of her accident). I therefore respectfully dissent from the majority's affirmance of the order under review.
Facts and Procedural Background
The motor vehicle accident giving rise to this dispute occurred on May 5, 2014. Plaintiff commenced this action against defendants (the driver and owner of the other vehicle involved in the incident) in December 2014. Issue was joined, and the parties proceeded to discovery. Plaintiff served a bill of particulars, dated June 19, 2015, alleging that she had suffered serious injuries to her cervical spine, lumbar spine and left shoulder in the accident. The bill of particulars further averred, inter alia, that these injuries resulted in "[a]ssociated and concomitant impairments and negative effects upon plaintiff's pre-accident enjoyment of life, day-to-day existence, activities, functions, employment and involvements," and in "[l]imitation, diminution and/or effect [sic] of functions, activities, vocation, avocation and all other activities in which the plaintiff engaged prior to the underlying accident."[FN2]
At her deposition on February 19, 2016, plaintiff testified that, from 1999 until the end of the 2013-2014 school year (about a month and a half after the accident), she had worked as a paraprofessional at a number of New York City public schools. She also testified that she had arthroscopic surgery on her left knee in October 2009 and surgery on her right knee in 2012. After each knee surgery, she walked with a cane for a period of time (she could not remember how long). At the time of the accident, she had not been using a cane. Plaintiff admitted, however, that she still experienced pain in both knees at the time of the deposition, more than three years after the second knee surgery. The knee surgeries also affected her ability to wear heels, although she still wore heels occasionally before the accident.
Plaintiff testified that, as a result of the injuries she sustained in the accident, she now walks with a cane and can no longer attend weekly salsa classes or wear heels. She also testified that, since the accident, she has had difficulty in "[s]leeping, cooking, cleaning, tak[ing] a shower, do[ing] the laundry. Walking, walking a lot. I mean, when I say walking, I have difficulties walking" (emphasis added). She denied having had any difficulty in walking before the accident, notwithstanding the two prior knee surgeries: "My knees, they didn't have any problems whatsoever for me to walk. I had the problem after [the accident] due to the back, that's what affected me more." When asked how the accident affected her ability to cook, plaintiff testified: "I'm not able to be standing for long periods of time preparing a glamorous meal."
After plaintiff's deposition, defendants served her counsel with a "Supplemental Notice for Discovery and Inspection and Demand for Authorizations," dated March 14, 2016 (the March 14 demand). Paragraph 12 of the March 14 demand sought "[a]uthorizations for all facilities where plaintiff received medical treatment for her knees, including, but not limited to, the hospital where her knee surgeries were performed." Plaintiff did not serve objections or any other response to the March 14 demand before the expiration of the time provided by law for her to do so (20 days, pursuant to CPLR 3122[a][1], plus five extra days based on defendants' service of the demand by mail, pursuant to CPLR 2103[b][2]). After the expiration of plaintiff's [*7]time to respond to the March 14 demand, defendants' counsel sent her counsel a letter, dated April 14, 2016, stating that no response to the March 14 demand had been received. The letter noted that "[w]e cannot proceed with scheduling plaintiff's IME(s) [i.e., independent medical examinations] at this time, as these additional authorizations are necessary." The letter requested that plaintiff "provide the requested discovery within the next thirty (30) days to avoid unnecessary motion practice," adding that the letter should be "consider[ed] . . . a good faith attempt to resolve this issue without seeking judicial intervention."
Apparently unbeknownst to defendant's counsel at the time the aforementioned April 14 letter was sent, just the previous day, plaintiff's counsel had served by mail a note of issue and certificate of readiness, both dated April 13, 2016 [FN3]. The certificate of readiness contained representations that "[d]iscovery proceedings have been completed" and that "[t]here are no outstanding requests for discovery." Contrary to these representations, as of April 13, 2016, plaintiff had not given any response to the March 14 demand, nor had any IME been conducted.
On May 9, 2016, defendants moved, as pertinent to this appeal, for an order vacating the note of issue and the certificate of readiness and compelling plaintiff to respond to the March 14 demand. With regard to the note of issue and certificate of readiness, defendants argued that the certificate "contains material errors" in that, contrary to the representation that discovery was complete, plaintiff had not yet responded to the March 14 demand and had not yet appeared for an IME [FN4]. Plaintiff's deposition transcript was attached as an exhibit to defense counsel's moving affirmation. Defense counsel also submitted an affirmation of good faith, in which she averred that plaintiff's counsel had "disregarded" defense counsel's efforts to resolve the outstanding discovery issues through the April 14 letter and telephone calls.
Plaintiff's answering papers in response to defendants' motion were due on June 6, 2016. On June 3, 2016, plaintiff finally served a response to the March 14 demand. The response objected to paragraph 12 of the demand — the item requesting medical records relating to plaintiff's knees — on the ground that "[d]efendants are not entitled to medical records for unrelated medical treatment; [m]edical records for treatment related to illnesses and/or injuries not claimed in the bill of particulars are privileged."
On June 6, 2016, plaintiff served her opposition to defendants' motion to vacate the note of issue and to compel. The opposition affirmation of plaintiff's counsel, to which a copy of the response to the March 14 demand (served only three days before) was attached, chiefly argued that the note of issue should not be vacated because plaintiff's belatedly-served response purportedly resolved all remaining discovery issues. Plaintiff's counsel also argued that the court should not consider any arguments made in defendants' reply papers that had not been first raised in their moving papers.
Defendants' counsel filed a reply affirmation, dated June 23, 2016, in further support of the motion. With regard to the prong of the motion seeking to strike the note of issue, counsel again contended that the certificate of readiness was inaccurate to the extent it represented that discovery was complete. As to defendants' asserted need for medical records relating to plaintiff's knees, counsel referred the court to her letter to plaintiff's counsel, dated June 23, [*8]2016, a copy of which was attached to the affirmation. The June 23 letter states in pertinent part:
"#12: Plaintiff makes multiple claims relating to loss of enjoyment of life in the Bill of Particulars, including, but not limited to, impairments and negative effects upon plaintiff's pre-accident enjoyment of life, day-to-day existence, activities, functions, employment and involvements; limitation, diminution and/or effect of functions, activities, vocation, avocation and all other activities in which plaintiff engaged prior to the underlying accident.' Additionally, plaintiff testified at her deposition on February 19, 2016 that she had left knee surgery in October 2009 and right knee surgery in 2012, at which point she started to rely on a cane. She further testified that she still has pain in both knees and still uses her cane. Your client also acknowledged during the deposition that her bilateral knee surgeries affected her ability to wear heels, which was one of her post-accident complaints. Given the foregoing, we request that you provide authorizations for all facilities where plaintiff received medical treatment for her knees, including, but not limited to, the hospital where her knee surgeries were performed, as requested in our demand."
Supreme Court decided the motion by order entered on or about June 30, 2016. Although the order granted defendants other relief not at issue on this appeal (including directing plaintiff to appear for an IME on July 12, 2016, a date the parties had agreed upon), it did not vacate the note of issue, nor did it direct plaintiff to provide defendants with authorizations for the release of medical records relating to the treatment of her knees, as sought by paragraph 12 of the March 14 demand [FN5]. Now before us is defendants' appeal from Supreme Court's order to the extent it denied these aspects of their motion. I note that plaintiff has not filed a respondent's brief in opposition to the appeal.
Discussion
I turn first to the branch of defendants' motion seeking to strike the note of issue. The Uniform Civil Rules for the Supreme Court and the County Court (22 NYCRR, Part 202) require that a note of issue to be filed pursuant to CPLR 3402(a) be accompanied by a certificate of readiness for trial (see 22 NYCRR 202.21[a]). A certificate of readiness must indicate that "[d]iscovery proceedings now known to be necessary [have been] completed" and that "[t]here are no outstanding requests for discovery" (22 NYCRR 202.21[b]), unless these requirements have been waived (which is not the case here). The rules governing vacatur of a note of issue are as follows, in pertinent part:
"(e) Vacating Note of Issue. Within 20 days after service of a note of issue and certificate of readiness, any party to the action . . . may move to vacate the note of issue, upon affidavit showing in what respects the case is not ready for trial, and the court may vacate the note of issue if it appears that a material fact in the certificate of readiness is incorrect . . . . At any time, the court on its own motion may vacate a note of issue if it appears that a material fact in the certificate of readiness is incorrect" (22 NYCRR 202.21[e]).
Here, defendants timely moved to vacate the note of issue on the ground that the accompanying certificate of readiness contained the material misrepresentations that "[d]iscovery [*9]proceedings have been completed" and that "[t]here are no outstanding requests for discovery."[FN6] In fact, the record establishes that, as of the date of plaintiff's note of issue and certificate of readiness (April 13, 2016), discovery proceedings had not been completed and that several requests for discovery — not only the request for authorizations for medical records relating to plaintiff's knees — remained outstanding. In particular, the authorization provided to defendants to obtain medical records from Nassau University Medical Center (NUMC) — the facility at which plaintiff had undergone spinal surgery for injuries incurred in the accident — had been rejected by NUMC for incompleteness, as plaintiff's counsel had been advised by letter in October 2015. Six months later, when plaintiff prematurely served the note of issue, she still had not furnished defendants with a complete authorization for the NUMC records. This failure by plaintiff — one particularly inexcusable given that she had been directed to provide a new authorization for NUMC at a compliance conference in November 2015 — fully explains why an IME had not been conducted as of April 2016, a year after joinder of issue. In addition, the March 14 demand sought authorizations for five other healthcare providers that defendants, after investigation, believed had treated plaintiff for injuries incurred in the accident, as well as for the records of the treatment of her knees. As previously noted, through the date on which plaintiff served the note of issue, she had simply ignored the March 14 demand, not even bothering to serve objections to it.
Given that "material fact[s] in the certificate of readiness [were] incorrect" (22 NYCRR 202.21[e]), the striking of plaintiff's prematurely filed note of issue would have been warranted even if defendants were not entitled to discovery of her knee-related medical records [FN7]. While at [*10]this point the other grounds on which defendants sought to vacate the note of issue have presumably become moot, I would find the striking of the note of issue still warranted, in view of the misrepresentation in the certificate of readiness, on the ground that defendants are entitled to the knee-related medical records sought by paragraph 12 of the March 14 demand, which were denied to them by the order under review. As previously stated, Supreme Court erred in denying defendants' motion to compel plaintiff to provide them with authorizations for this material.
First, for the reasons discussed at the opening of this opinion, the medical records of the treatment of plaintiff's knees within five years before the accident are "material and necessary" (CPLR 3101[a]) to the defense of an action seeking to recover for, inter alia, the restriction of plaintiff's ability to walk and to stand — bodily actions produced by a kinetic chain that includes both the spine and the knees. Therefore, by suing to recover damages for the restriction of her ability to walk and to stand, plaintiff has placed in issue, not only the condition of her lumbar and cervical spine (which were allegedly injured in the accident), but also the condition of her knees, which — although plaintiff makes no claim that they were injured in the accident — are equally essential to the actions of walking and standing, and which, as plaintiff admits, still cause her pain. Hence, plaintiff has waived, for purposes of this action, the privilege attaching to her knee-related medical records (see Cynthia B., 60 NY2d at 456-457; CPLR 3121[a], 4504[a]).
Notwithstanding plaintiff's denial that she suffered any further injury to her knees in the accident, granting defendants access to her knee-related medical records is consistent with this Court's precedents. Unlike the Second Department, we have held that a personal-injury plaintiff seeking to recover for a generalized loss of enjoyment of life, life expectancy or ability to work does not place his or her entire medical condition at issue (compare Diako v Yunga, 148 AD3d 438 [1st Dept 2017, Gische, J., concurring], with Bravo v Vargas, 113 AD3d at 578). As the majority concedes, under the Second Department's precedents, defendants would be entitled to discovery of plaintiff's medical records relating to her knees. However, we need not adopt the Second Department's expansive view of the scope of discovery of medical history to afford defendants in this case disclosure of the records of the treatment of plaintiff's knees. This is because the condition of plaintiff's knees — one of which was operated on about two years before the accident, the other of which was operated on about four and a half years before that accident, and both of which still caused her pain as of the time she was deposed — is obviously relevant to the specific functional deficits (difficulty in walking and in standing) that she attributes to the spinal injuries she suffered in the accident.
In previous cases, we have permitted disclosure of medical records pertaining to a preexisting condition that possibly gave rise to the same functional deficits or pain that the plaintiff attributed to injuries caused by the defendants' negligence (see Walters v Sallah, 109 AD3d 401, 401 [1st Dept 2013] [holding the defense entitled to disclosure of medical records pertaining to the plaintiff's preexisting arthritic condition to determine whether that condition, as opposed to the knee and wrist injuries he sustained in the subject car accident, was a "cause of (his) inability to perform substantially all of his usual daily activities"]; Bennett v Gordon, 99 AD3d 539, 540 [1st Dept 2012] [where the plaintiff sought to recover for injuries to his head and left shoulder that allegedly caused "regular tremors in his upper extremities and overall [*11]weakness," the defense was entitled to disclosure of medical records of an earlier injury to the right shoulder, from which the tremors and weakness complained of "conceivably derived"]; Caplow v Otis El. Co., 176 AD2d 199, 200 [1st Dept 1991] [where the plaintiff sued for a back injury sustained in an accident, the defense was entitled to disclosure of medical records relating to back problems from which he began to suffer 10 years prior to the accident because "(m)edical records relating to this long-standing condition might show that the pain he experienced after the accident was attributable to this pre-existing condition and not to the accident"]). Contrary to the majority's view, our reasoning in allowing the controverted discovery in each of these cases was based largely on the possibility that — as in this case — the specific functional impairment or pain that the plaintiff attributed to the defendant's negligence might have been caused, in whole or in part, by a known condition or injury that preexisted the accident at issue.
To be sure, as previously noted, our more recent decisions have clarified that, unlike the Second Department, we do not regard generalized allegations of loss of enjoyment of life or of the ability to work as opening the door to a plaintiff's entire medical history. We have never held, however, that a defendant is not entitled to disclosure of medical records pertaining to a preexisting condition that may have caused, independent of the injuries attributed to the defendant, the particular functional deficits or pain for which recovery is sought [FN8]. I see no reason [*12]to depart from our earlier cases holding that such disclosure is appropriate.[FN9]
While plaintiff, as previously noted, has not filed any brief with this Court in opposition to defendants' appeal, to the extent she argued before Supreme Court that defendants did not make a sufficient showing of entitlement to disclosure of the records in question in their moving papers, any such argument is unavailing. Defendants' moving papers in support of their application to compel plaintiff to produce authorizations for her knee-related medical records, as requested by paragraph 12 of the March 14 demand, included the transcript of plaintiff's deposition, in which she testified that her injuries in the accident had caused her to experience difficulty in walking and standing — testimony that made obvious the relevance of the condition of her knees. As previously noted, plaintiff's failure to serve a response objecting to the March 14 demand within the time provided by CPLR 3122(a)(1) forecloses inquiry into the propriety of the requests for information at issue except insofar as the information sought is privileged or the requests are palpably improper (see Recine, 156 AD3d at 836; Patrick M. Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3122:1, C3124:2). Here, given that, for the reasons previously discussed, the medical records pertaining to the condition of plaintiff's knees are plainly material and necessary to the defense of this action, the request for authorizations permitting defendants to obtain such records cannot be said to be palpably improper, and plaintiff has waived the privilege attaching to such records for purposes of this action.
In the end, the basis of the majority's position is the assertion that the possible effect of plaintiff's preexisting knee condition on her ability to walk and to stand — the impairment of which is a principal component of her alleged damages in this action — is a novel "medical theory" I have devised that is not worthy of consideration in the absence of supporting expert evidence. While it appears that the majority would consider the possibility that the condition of the knees might affect a persons's ability to walk if presented by way of an expert affidavit, such an obvious, common-sense proposition does not require the support of expert evidence. As to the majority's complaint that "[p]laintiff has not had an opportunity to respond through medical [*13]opinion to [this writing's] theory," it is difficult to imagine that any medical expert would opine that the condition of a person's knees cannot affect his or her ability to walk or to stand.[FN10]
Order Supreme Court, Bronx County (Laura G. Douglas, J.), entered on or about June 30, 2016. affirmed, without costs.
Opinion by Singh, J. All concur except Friedman, J.P. and Tom, J. who dissent in an Opinion by Friedman, J.P.
Friedman, J.P., Manzanet-Daniels, Tom, Mazzarelli, Singh, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: NOVEMBER 27, 2018
CLERK



Footnotes

Footnote 1:Accord Greco v Wellington Leasing L.P., 144 AD3d 981, 982 (2d Dept 2016); Farrell v E.W. Howell Co., LLC 103 AD3d 772, 773 (2d Dept 2013); O'Rourke v Chew, 84 AD3d 1193, 1194 (2d Dept 2011); DeLouise v S.K.I. Wholesale Beer Corp., 79 AD3d 1092, 1093 (2d Dept 2010); Abdalla v Mazl Taxi, Inc., 66 AD3d 803, 804 (2d Dept 2009); Diamond v Ross Orthopedic Group, P.C., 41 AD3d 768, 768-769 (2d Dept 2007); Avila v 106 Corona Realty Corp., 300 AD2d 266, 267 (2d Dept 2002).

Footnote 2:Although the bill of particulars was not part of the record on which Supreme Court rendered the order appealed from, this Court, by order entered October 17, 2017, enlarged the record on appeal to include it.

Footnote 3:It appears from the record that defendants' counsel received the note of issue and certificate of readiness on April 20, 2016.

Footnote 4:In spite of the unresolved issue concerning their access to plaintiff's knee-related medical records, defendants served a notice designating a physician to conduct plaintiff's IME on May 9, 2016.

Footnote 5:The order did not set forth the court's reasons for its disposition of the motion.

Footnote 6:In opposing the motion to strike the note of issue, plaintiff did not dispute that defendants' application for such relief was timely. Further, as defendants noted in their moving papers, this branch of the motion was, in fact, timely made. Plaintiff served the note of issue and certificate of readiness by mail on April 13, 2016. Defendants' 20-day period in which to move to strike the note of issue (22 NYCRR 202.21[e]) was increased by 5 days by reason of plaintiff's service by mail (see CPLR 2103[b][2]). The period of 25 days from April 13, 2016, lapsed on May 8, 2016, which was a Sunday, affording defendants one additional day to move (see General Construction Law § 25-a). Accordingly, defendants' motion to strike the note of issue was timely served on May 9, 2016.

Footnote 7:The resolution of the other discovery issues raised by defendant's motion in their favor still placed them at a disadvantage without vacatur of the note of issue. Plaintiff did furnish to defendants, with the opposition papers she served on June 6, 2016, a new authorization for NUMC and an authorization for one of the healthcare providers sought in the March 14 demand. In addition, the order appealed from, entered June 30, 2016, granted defendants' motion to the extent of directing plaintiff to provide authorizations for the four other named providers for whom authorizations were sought in the March 14 demand. This relief, however, left defendants with very little time to use the medical records furnished in response to the authorizations to prepare for the IME, which was scheduled to take place on July 12, 2016. The majority, in affirming the denial of the motion to strike the note of issue, ignores both plaintiff's outright misrepresentations in the certificate of readiness and the prejudice to defendants resulting from Supreme Court's denial of the motion to strike.

Footnote 8:The majority incorrectly asserts that this Court's "settled precedent" mandates the unfair result it would reach. On the contrary, the bulk of our recent decisions referenced by the majority denied discovery of medical records that did not concern pre-accident treatment of a body part integrally involved in the same specific physical bodily function (as, in this case, the knees are involved in walking and standing) that was claimed to have become impaired as a result of the defendant's negligence (see Rohan v Turner Constr. Co., 158 AD3d 436, 436 [1st Dept 2018] ["defendants did not demonstrate that the additional information sought, relating to a 1987 automobile accident in which plaintiff broke his legs, was relevant to his traumatic brain injury claims in this action involving a 2012 construction site accident"]; Spencer v Willard J. Price Assoc., LLC, 155 AD3d 592, 592 [1st Dept 2017] [the plaintiff's allegations of "orthopedic injuries . . . to her knees, neck, back and shoulder . . . did not place in issue her entire medical condition, including her diabetic condition and high blood pressure"]; James v 1620 Westchester Ave. LLC, 147 AD3d 575, 576-577 [1st Dept 2017] [in a suit seeking recovery for "back and leg injuries," the defendants were not entitled to discovery of the plaintiff's "medical records concerning HIV (status)" or her "mental health, alcohol abuse, or substance abuse records"]; Gumbs v Flushing Town Ctr. III, L.P., 114 AD3d 573, 573 [1st Dept 2014] [where damages were sought for "a torn rotator cuff, a fractured ankle and other orthopedic injuries," the defendants were not entitled to discovery of "the records of (the plaintiff's) cardiologist"]). Our decision in Diako (148 AD3d at 438) does not indicate the scope of the request for medical records that was found to have been properly denied.

Footnote 9:I recognize, of course, that "discovery determinations rest within the sound discretion of the trial court" (Andon v 302-304 Mott St. Assoc., 94 NY2d 740, 745 [2000]), and that the trial court's exercise of its discretion in these matters is entitled to a substantial measure of deference. This Court, however, "is vested with a corresponding power to substitute its own discretion for that of the trial court, even in the absence of abuse" (id.). In any event, given the manifest potential relevance of the condition of plaintiff's knees to any defense to her claim to recover for her difficulty in walking and standing, I would find that Supreme Court's unexplained exercise of its discretion to deny defendants' any disclosure pertaining to plaintiffs' knees constituted an abuse of discretion as a matter of law.

Footnote 10:Entirely misplaced is the majority's complaint that "defendants have failed to provide opinion, expert or otherwise, causally connecting plaintiff's prior treatment of her knees to her subsequent spinal and shoulder injuries." The contention here is not that the treatment of plaintiff's knees caused the back and shoulder injuries she allegedly suffered in the subsequent accident. Rather, the contention is that the prior condition of the knees may have caused, in whole or in part, the impairment in her ability to walk and to stand that plaintiff, in this action, solely attributes to the back injuries she allegedly incurred in the accident. To the extent defendants' moving papers did not fully spell out this self-evident reasoning, plaintiff's failure to raise a timely objection to defendants' discovery request precludes any such argument, as previously discussed.